## Exhibit B

Letter from Robert P. DeWitte to Brian Melendez (June 10, 2019)



3301 Kerner Boulevard  415.798.5900  PHONE
San Rafael, CA 94901  415.892.7354  FAX
kccllc.com

June 10, 2019

Brian Melendez, Esq.
Barnes & Thornburg LLP
225 S. Sixth St., Suite 2800
Minneapolis, MN 55402

Re:  *Carlson v. Target Enterprise*
     Class Action Settlement Administration Services Estimate

Dear Brian,

We appreciate the opportunity to submit this proposal and cost estimate for class action administration services pertaining to *Carlson v. Target Enterprise*.

For the purposes of this proposal, we applied the following assumptions with respect to KCC's duties:
- Print and mail a single-postcard Summary Notice to an estimated 45,781 class members;
- Conduct address searches for any Notices returned as undeliverable and re-mail to any new found address;
- Establish and maintain a case website that will contain relevant case documents, important dates, frequently asked questions and allow class members to file claims online;
- Process opt-outs and provide a Declaration of Notice Procedures to the parties indicating our compliance with the noticing efforts;
- Process all claims received and issue checks to class members who submit an approved claim, as appropriate; and
- Conduct address searches for any checks returned as undeliverable and re-mail to any new found address.

In addition, we included pricing associated with KCC providing the following optional services:
- Perform any required CAFA mailing to appropriate government officials; and
- Provide automated telephone support to handle any class member inquiries and fulfill notice packet requests.

KCC has administered or is currently administering TCPA settlements of all shapes and sizes, and is therefore fully versed in the wide range of administrative issues that can arise in these matters. A selection of KCC's numerous TCPA settlement administrations follows:
- *Abante Rooter and Plumbing v. Alarm.com, Inc.*, No. 15-cv-06314 (N.D. Cal.) (442,409 class members)
- *Abdeljalil v. GE Capital Retail Bank*, No. 12-cv-02078 (S.D. Cal.) (1,000,000 class members)
  *Adams v. AllianceOne Receivables Management, Inc.*, No. 08-cv-00248 (S.D. Cal.) (5,600,000 class members)
- *Allard v. SCI Direct, Inc. d/b/a Neptune Society*, No. 17-cv-04692 (N.D. Ill.) (593,000 class members)
- *Allen v. JPMorgan Chase Bank*, No. 13-cv-08285 (N.D. Ill.) (2,250,145 class members)
- *Bayat v. Bank of the West*, No. 13-cv-2376 (N.D. Cal.) (870,000 class members)
- *Birchmeier et al. v. Caribbean Cruise Line, Inc.*, No. 12-cv-04069 (N.D. Ill.) (844,191 class members)
- *Biringer v. First Family Insurance, Inc.*, No. 14-cv-566 (N.D. Fla.) (278,282 class members)
- *Boise v. ACE American Insurance Company et al.*, No. 15-cv-21264, (S.D. Fla.) (1,300,000 class members)
- *Charvat v. AEP Energy*, No. 14-cv-3121 (N.D. Ill.) (1,121,000 class members)
- *Coffman v. Glide Talk, Ltd.*, No. 13-cv-05190 (N.D. Ill.) (1,000,000 class members)
- *Connor v. JPMorgan*, No. 10-cv-01284 (S.D. Cal.) (2,500,000 class members)
- *Couser v. Comenity Bank*, No. 12-cv-02484 (N.D. Cal.) (4,000,000 class members)
- *Couser v. Dish One Satellite, LLC*, No. 15-cv-02218 (C.D. Cal.) (94,877 class members)
- *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-cv-4462 (N.D. Ill.) ($40 million settlement)



- *Crossley et al. v. Joya Communications, Inc.*, No. 16 CH 14771, (Circuit Court of Cook County, Ill.) (3,300,000 class members)
- *Cummings v. Sallie Mae, Inc.*, No. 12-cv-9984 (N.D. Ill.) (205,321 class members)
- *Davenport v. Discover*, No. 15-cv-06052 (N.D. Ill.) (2,000,000 class members)
- *Etzkorn v. 3 Day Blinds*, No. 17-cv-02836 (E.D. Mo.) (120,000 class members)
- *Griffith v. ContextMedia, Inc.* Class Certification, No. 16-cv-02900 (N.D. Ill.) (2,239 class members)
- *Grannan v. Alliant Law Group, P.C.*, No. 10-cv-02803 (N.D. Cal.) (242,000 class members)
- *Guarisma v. Blue Cross Blue Shield of Florida*, No.13-cv-21016 (S.D. Fla.) (1,546,405 class members)
- *Hageman v. AT&T Mobility LLC*, No. 13-cv-50 (D. Mont.) ($45 million settlement)
- *Hetherington v. Omaha Steaks*, No. 13-cv-2152 (D. Ore.) (1,353,784 class members)
- *Horn, et al. v. iCan Benefit Group LLC*, No. 17-cv-81027 (S.D. Fla.) (4,000,000 class members)
- *In re Life Time Fitness*, MDL No. 2564 (D. Minn.) (592,840 class members)
- *In Re Midland Credit Management, Inc. TCPA Litigation*, No. 11-md-2286 (S.D. Cal.) (41,926,701 class members)
- *In Re: Monitronics International, Inc. TCPA Litigation*, No. 13-md-2493 (N.D. W.Va.) (7,789,972 class members)
- *In re: Portfolio Recovery Associates, LLC TCPA Litigation*, No. 11-md-02295 (S.D. Cal.) (7,400,000 class members)
- *Jonsson v. USCB, Inc.*, No. 13-cv-8166 (C.D. Cal.) (621,728 class members)
- *Kolinek v. Walgreen Co.*, No. 13-cv-04806 (N.D. Ill.) (9,367,000 class members)
- *Lee v. Global Tel Link Corporation*, No. 15-cv-02495, (C.D. Cal.) (1,800,000 class members)
- *Lees v. Anthem Ins. Cos., Inc.*, No. 13-cv-01411 (E.D. Mo.) (1,029,790 class members)
- *Leung v. XPO Settlement*, No. 15-cv-03877 (N.D. Ill.) (325,000 class members)
- *Luster v. Duncan Solutions*, No. 14-cv-00112 (N.D. Ga.) (887,000 class members)
- *Luster v. Wells Fargo*, No. 15-cv-01058 (N.D. Ga.) (3,385,048 class members)
- *Martin v. Global Marketing Research Services, Inc.*, No. 14-cv-1290 (M.D. Fla) (668,500 class members)
- *Martinez, et al. v. Medicredit, Inc., et al.*, No. 17-cv-02809 (E.D. Mo.) (498,599 class members)
- *Medina v. Enhanced Recovery Company LLC d/b/a ERC*, No. 15-cv-14342 (S.D. Fla.) (157,000 class members)
- *Melito v. American Eagle Outfitters*, No. 14-cv-02440 (S.D.N.Y.) (541,000 class members)
- *Mey v. Patriot Payment Group*, No. 15-cv-00027 (N.D.W. Va.) (265,315 class members)
- *Newman v. AmeriCredit*, No. 11-cv-3041 (S.D. Cal.) (1,900,000 class members)
- *Prater v. Medicredit, Inc.*, No. 14-cv-00159 (E.D. Mo.) (704,675 class members)
- *Prather v. Wells Fargo*, No. 15-cv-04231 (M.D. Ga.) (446,252 class members)
- *R. Fellen, Inc. v. Rehabcare Group, Inc., et al.*, No. 14-cv-0208 (E.D. Cal.) ($25,000,000 settlement)
- *Reginald Moore v. Family Dollar Stores, Inc.*, No. 14- cv-01542 (E.D. Mo.) (274,143 class members)
- *Rinky Oink Inc. v. World Business Lenders LLC*, No. 14-cv-00268 (W.D. Wash.) (216,000 class members)
- *Schwyhart v. AmSher Collection Services*, No. 15-cv-01175 (N.D. Ala.) (60,000 class members)
- *Sherman v. Kaiser Foundation Health Plan, Inc.*, No. 13-cv-00981 (S.D. Cal.) (864,412 class members)
- *Shestopal v. Follett Higher Education Group Inc.*, No. 15-cv-8980 (N.D. Ill.) (1,884,260 class members)
- *Steinfeld v. Discover Financial Services*, No. 12-cv-01118 (N.D. Cal.) (9,321,116 class members)
- *Wannemacher v. Carrington Mortgage Servs.*, No. 12-cv-02016 (C.D. Cal) (98,000 class members)
- *West v. California Service Bureau, Inc.*, No. 16-cv-03124 (N.D. Cal.) (63,000 class members)
- *Willis v. iHeartMedia, Inc.* No. 2016 CH 02455 (Cook County Circuit Court, Ill.) (386,204 class members)

With experience administering more than 6,000 settlements, KCC provides high-quality and cost-effective class action administration services including pre-settlement consulting, settlement funds escrow, class



member data management, legal notification, call center support, claims administration as well as disbursement and tax reporting services. We are a knowledgeable partner who proactively works with you throughout the settlement administration process and are well-positioned to handle your matter immediately.

Our domestic infrastructure, the largest in the industry, includes a 1,200-seat call center and document production capabilities that handle hundreds of millions of documents annually. Last year, our disbursement services team distributed $500 billion to payees in the form of 29 million checks and 11 million electronic transfers.

Please contact me with any questions regarding the enclosed case assumptions and cost estimate. We will hold this proposal and estimate open for ninety days from the date of this letter. Thank you for your time and consideration.

Sincerely,

Robert P. DeWitte
Senior Director, Class Action Services
KCC LLC
Tel: (312) 768-5499
Cell: (773) 791-4510
Email: rdewitte@kccllc.com



## COST SUMMARY & SCOPE OF SERVICES

| Description | Estimated Cost |
|---|---|
| Notice Procedures | $20,575 |
| Claims Administration | $15,181 |
| Disbursement & Tax Reporting | $9,267 |
| **Sub-Total Administration Costs** | **$45,023** |
| Plus Estimated Postage | $16,077 |
| **Total Estimated Cost** | **$61,101** |
| | |
| **LessClient Courtesy Discount** | **($5,000)** |
| **Total Estimated Cost, with Discount** | **$56,101** |

The final cost of the administration depends primarily on, among other variables, the total number of claims processed and the manner by which they are filed.

Provided there is no significant change to the scope of work, we will discount our administration costs by $5,000, reducing the total estimated cost of the administration to $56,101.

### ADDITIONAL SERVICES

CAFA Mailing – $1,500
Automated Call Support – $7,122

### NOTICE PROCEDURES

**Data and Forms Management**
We will process class member data and pre-assign a unique sequential control number to each class member that will be used throughout the administration process. Prior to mailing, the addresses will be updated using the National Change of Address System ("NCOA") to increase mail deliverability and accuracy. Our estimate assumes that the class member data will be delivered in one electronic file in a complete and accurate form.

We will format all relevant documents and will send all document proofs to you for approval prior to printing.

**Print and Mail Notice Packet**
The notice packet will be a single-postcard Summary Notice that will be sent to class members via First Class U.S. mail. All notice packets returned by the postal service with a forwarding address will be re-mailed to the new address and the class member list will be updated accordingly.

**Address Searches and Re-mails**
We will track all returned undeliverable mail and conduct address searches using credit bureau information for all returned mail that does not have a forwarding address. We will re-mail to the class members for whom we locate updated address information.

**Website Set-up and Maintenance**
We will establish and maintain a case-specific website incorporating important court documents, dates, FAQs, forms and other pertinent case information.

The option to file claims online will be provided. KCC will work with the parties to ensure that the required information is provided in order for a class member to file a claim online.

**Opt-out Processing & Declaration of Notice Procedures**
We will process any Requests for Exclusion, and provide copies to counsel and the Court. We will prepare a Declaration of Notice Procedures to report our compliance with all class notification requirements.



### CLAIMS ADMINISTRATION

We will ensure that all settlement agreement requirements have been satisfied and approve or deny individual class claims. After processing, we will provide the appropriate parties with the approved claimants list, including the distribution calculations for each claim.

We have estimated a claims filing rate of 20%, of which 70% will be filed online and 30% will be filed by postal mail.

### DISBURSEMENT AND TAX REPORTING

#### Disbursement
We will obtain a Taxpayer ID number for the settlement fund and open the settlement fund bank account. We will make distributions to the claimants, attorneys and named plaintiffs, as applicable, in accordance with the terms of the settlement agreement. Our disbursement services include:
- An 8 ½" x 11" sheet with the check printed on safety paper on the bottom one-third and a transmittal letter printed on the top two-thirds;
- Through the Positive Pay system, we will regularly monitor the account for potential fraud;
- Daily updates of the check register to respond to claimant requests for misplaced checks and daily account reconciliation;
- Processing stop payment/re-issue requests, tracking and re-mailing undeliverable checks; and
- Conduct address searches for any checks returned as undeliverable and re-mail to any new found address.

#### Tax Reporting
All required taxes will be paid from the settlement fund, and we will work with a CPA firm to file all necessary tax returns.

### ADDITIONAL SERVICES

#### CAFA Notice
We will copy the exhibits of the Settlement onto CDs and send them by USPS Priority Mail to all State Attorneys General and the US Attorney General. We recommend a generic cover letter and can share letters we have used previously.

#### Automated Call Support
We will set up a toll-free automated Interactive Voice Response (IVR) system through which class members can access settlement information (via menu-driven Q&A's) and facilitate Notice Packet requests.



**Administration Services Estimate**
*Carlson v. Target Enterprise, Inc.*
June 10, 2019
Robert P. DeWitte; RDeWitte@kccllc.com; 773.791.4510

| Key Assumptions Used in Estimate Preparation | | | | |
|---|---|---|---|---|
| Size of Class: | 45,781 class members | | | |
| Case Duration: | 12 months | | | |
| # of Electronic, Finalized Data Files Provided (Excel, Access, etc.): | 1 file(s) | **SUMMARY OF COSTS** | | |
| **CAFA Notice Required?** | Yes *(Optional)* | Estimated Claims Filing Rate: | 20% | |
| | | Estimated # of Claims Filed: | 9,156 | |
| Claims Processing: | Yes | Notice Procedures | $20,575 | |
| Address Searches: | Yes | Telephone Support | $7,090 | |
| % of returned notices to be forwarded: | 0% | Claims Administration | $15,181 | |
| % of returned undeliverable notices: | 15% | Disbursements & Tax Reporting | $9,267 | |
| % of successful address searches: | 60% | **Sub-Total Administration Costs** | **$45,023** | |
| Media Campaign Required: | No | Plus Estimated Postage* | $16,077 | |
| Expert Media Services: | No | **Total Estimated Cost**** | **$61,101** | |
| Translations Required: | No | Less Client Courtesy Discount**** | ($5,000) | |
| # of Email Campaigns: | N/A | Total Est. Cost, with Discount** | $56,101 | |
| Reminder Mailing: | No | | | |
| | | **Additional Services** | | |
| Duration of Claims Filing Period: | 8 weeks | CAFA Mailing | $1,500 | |
| Business Reply Mail ("BRM" or "pre-paid" postage): | No | Automated Call Support | $7,122 | |
| % of class members that will file a claim: | 20% | | | |
| % of claims filed online: | 70% | | | |
| % of claims filed by postal mail: | 30% | | | |
| % of deficient claims filed by postal mail: | TBD | | | |
| Type of Telephone Support: | Automated *(Optional)* | | | |
| % of class that will call: | 25% | | | |
| % of callers that will request a Notice Packet: | 5% | | | |
| Duration of Telephone Support: | 12 months | | | |
| Type of Website Support: | Dynamic | | | |
| Online Claims Filing: | Yes | | | |
| Duration of Website Support | 12 months | | | |

| BLENDED HOURLY RATE | RATE PER UNIT |
|---|---|
| KCC Blended Hourly Rate | $100.00 /hour |

For purposes of this estimate, KCC has applied and will bill at a blended hourly rate of $100 per hour to all hours estimated pursuant to the scope of work outlined above. For any work outside of this defined scope, we will apply and bill our Standard Hourly Rates, which are specified below.

| NOTICE PROCEDURES | RESPONSE RATE | QUANTITY | RATE PER UNIT | ESTIMATED COST | TOTAL |
|---|---|---|---|---|---|
| **Data and Forms Set-up** | | | | | |
| Intake and Process Data, Set up Case Management System | | 20 hrs | $100.00 | $2,000 | |
| Format Document(s) | | 10 hrs | $100.00 | $1,000 | |
| Sub-total of Data and Forms Set-up | | | | | $3,000 |
| **Print/Mail Notice Packet** | | | | | |
| NCOA Updates | | 45,781 units | | $250 | |
| Single Postcard Summary Notice | | 45,781 units | $0.079 | $3,617 | |
| Print Production Management | | 10 hrs | $100.00 | $1,000 | |
| Returned Undeliverable Mail | 15% | 6,867 units | $0.10 | $687 | |
| Sub-total of Print/Mail Notice Packet | | | | | $5,553 |
| **Address Searches/Re-mails** | | | | | |
| Number of Address Searches Performed | | 6,867 units | $0.25 | $1,717 | |
| Number of New Addresses Found | 60% | 4,120 units | | | |
| Re-mails to Found Addresses | | 4,120 units | $0.25 | $1,030 | |
| Staff Time for Address Searches/Re-mails | | 5 hrs | $100.00 | $500 | |
| Sub-total of Address Searches/Re-mails | | | | | $3,247 |
| **Website Set-up & Maintenance** | | | | | |
| Design & Set up Dynamic Website | | 40 hrs | $100.00 | $4,000 | |
| Domain Registration (5 yrs/Privacy Registration) | | | | $175 | |
| Maintenance | | 5 hrs | $100.00 | $500 | |
| Server Space rental | | 12 mos | $50.00 | $600 | |
| Sub-total of Website Set-up & Maintenance | | | | | $5,275 |
| Case Management, Opt Out Processing, and Declaration of Notice Procedures | | 35 hrs | $100.00 | $3,500 | |
| Sub-total of Case Management, Opt Out Processing, and Declaration of Notice Procedures | | | | | $3,500 |
| **SUB-TOTAL OF NOTICE PROCEDURES** | | | | | **$20,575** |



## Administration Services Estimate
### Carlson v. Target Enterprise, Inc.
June 10, 2019
Robert P. DeWitte: RDeWitte@kccllc.com; 773.791.4510

| CLAIMS ADMINISTRATION | RESPONSE RATE | QUANTITY | RATE PER UNIT | ESTIMATED COST | TOTAL |
|---|---|---|---|---|---|
| Estimated # of Claims | 20% | 9,156 claims | | | |
| Process Claims Filed Online | 70% | 6,409 claims | $0.50 | $3,205 | |
| Process Claims Filed by Postal Mail | 30% | 2,747 claims | | | |
| - Staff Hours Processing Claims | | 50 hrs | $100.00 | $5,000 | |
| - Data Entry & Claim Scoring Set-up | | | | $895 | |
| - Open/Image/Data Enter Forms | | 2,747 claims | $1.85 | $5,082 | |
| Deficient Claims filed by Postal Mail | TBD | TBD units | | | |
| Duplicate / Denied Claims | 30% | 2,747 units | | | |
| Status Reports | | 10 hrs | $100.00 | $1,000 | |
| SUB-TOTAL OF CLAIMS ADMINISTRATION | | | | | $15,181 |

| DISBURSEMENTS & TAX REPORTING | RESPONSE RATE | QUANTITY | RATE PER UNIT | ESTIMATED COST | TOTAL |
|---|---|---|---|---|---|
| Funds Management, Obtain Tax ID | | 10 hrs | $100.00 | $1,000 | |
| Distribution Calculations & Prep | | 20 hrs | $100.00 | $2,000 | |
| Print/Mail Checks | | 6,409 cks | $0.50 | $3,205 | |
| Returned Undeliverable Checks | 2% | 128 units | | | |
| - Handling of Returned Undeliverable Mail | | 128 units | $0.10 | $13 | |
| Address Searches/Re-mails | | | | | |
| - Number of Address Searches Performed | | 128 units | $0.25 | $32 | |
| - Number of New Addresses Found | 90% | 115 units | | | |
| Reissue Checks | | 115 cks | $4.50 | $518 | |
| Post-Distribution Follow-up & Reports | | 15 hrs | $100.00 | $1,500 | |
| Settlement Fund Tax Returns (annual) | | 1 yrs | $1,000.00 | $1,000 | |
| SUB-TOTAL OF DISBURSEMENTS & TAX REPORTING | | | | | $9,267 |
| | | | | | |
| SUB-TOTAL ADMINISTRATION COSTS | | | | | $45,023 |
| Plus Estimated Postage* | | | | | $16,077 |
| TOTAL ESTIMATED COST** | | | | | $61,101 |
| | | | | | |
| LESS CLIENT COURTESY DISCOUNT**** | | | | | ($5,000) |
| TOTAL ESTIMATED COST, WITH DISCOUNT | | | | | $56,101 |

| ADDITIONAL SERVICES | RESPONSE RATE | QUANTITY | RATE PER UNIT | ESTIMATED COST | TOTAL |
|---|---|---|---|---|---|
| CAFA Mailing | | | | | |
| - CAFA Mailing to State Attorneys General and US Attorney General | | 1 time(s) | $1,500.00 | $1,500 | |
| Sub-total of CAFA Mailing | | | | | $1,500 |
| Automated Call Support | | | | | |
| - Toll Free Phone Line & System Set-up Cost | | | | $3,750 | |
| - Script Drafting and Management | | 10 hrs | $100.00 | $1,000 | |
| - Monthly Maintenance Fees | | 12 mos | $50.00 | $600 | |
| - Estimated # of Calls | 3% | 1,145 calls | | | |
| - Average Call Duration (minutes) | | 3 mins | | | |
| - IVR Line Charges | | 3,435 mins | $0.18 /min | $618 | |
| - Long-Form Notice Packet Requests | 5% | 58 units | | | |
| - Fulfill Notice Packet Requests | | 58 units | $1.50 | $87 | |
| - Print Production Management | | 4 hrs | $100.00 | $400 | |
| - Transcriptions | | 58 units | $0.60 | $35 | |
| - Staff Time Downloading Transcribed Data (30 min/month x 12 months) | | 6 hrs | $100.00 | $600 | |
| Sub-total of Automated Call Support | | | | | $7,090 |
| Plus Estimated Postage* | | | | | $32 |
| Total of Automated Call Support, Plus Estimated Postage* | | | | | $7,122 |

| STANDARD HOURLY RATES | RATE PER UNIT |
|---|---|
| KCC Standard Hourly Rates | |
| - Principal | $290.00 /hour |
| - Director | $235.00 /hour |
| - Sr. Manager | $185.00 /hour |
| - Manager | $160.00 /hour |
| - Supervisor | $120.00 /hour |
| - Staff | $60.00 - $85.00 /hour |



**Administration Services Estimate**
*Carlson v. Target Enterprise, Inc.*
June 10, 2019
Robert P. DeWitte; RDeWitte@kccllc.com; 773.791.4510

| OTHER SERVICES AND OUT-OF-POCKET EXPENSES | RATE PER UNIT |
|---|---|
| Other Services and Ad Hoc Reporting, as needed or requested | (standard hourly rates) |
| Other Charges and Out-of-Pocket Costs*** | (actual) |

\* Estimated Postage and Handling
\*\* Does not include applicable taxes or escheatment services
\*\*\* Includes, but is not limited to long distance calls, overnight shipping, photocopies, storage, PO Box rentals, broker fees, etc.
\*\*\*\* Discount is contingent upon no significant change in the scope of work

This Class Action Administration Services Estimate and the attached Cost Summary & Scope of Services (together, the "Proposal") are valid for ninety days from 6/10/2019. After such period, KCC reserves the right to amend the Proposal (including, without limitation, by increasing fees and costs) or to withdraw the Proposal in its sole discretion.

All services to be provided to the undersigned (the "Client") and all fees and costs set forth in the Proposal are subject to the terms, specifications, assumptions and conditions set forth in the Proposal and the attached Terms and Conditions (the "Terms of Service"). The estimated fees and charges in the Proposal are based on certain information provided to KCC as well as significant assumptions. Accordingly, this estimate is not intended to limit KCC's actual fees and charges, which may be less or more than estimated due to the scope of actual services or changes to the underlying facts or assumptions.

KCC Class Actions Services, LLC

BY: _____  DATE: _____

TITLE: _____

Barnes & Thornburg LLP

BY: _____  DATE: _____

TITLE: _____



## TERMS AND CONDITIONS

All services to be provided by KCC Class Action Services, LLC (together with its affiliates, "KCC"), including services provided to Client as set forth in the attached Proposal, are subject to the following Terms and Conditions:

**1. SERVICES.** KCC agrees to provide the services set forth in the Proposal attached hereto (the "Services"). Capitalized terms not otherwise defined herein have the meanings given to such terms in the Proposal. KCC will often take direction from Client's representatives, employees, agents and/or professionals (collectively, the "Client Parties") with respect to the Services. The parties agree that KCC may rely upon, and Client agrees to be bound by, any direction, advice or information provided by the Client Parties to the same extent as if provided by Client. Client agrees and understands that KCC shall not provide Client or any other party with any legal advice.

**2. PRICES, CHARGES AND PAYMENT.** KCC agrees to charge and Client agrees to pay, subject to the terms herein, KCC for its fees and charges as set forth in the Proposal. Client acknowledges that any estimate in the Proposal is based on information provided by Client to KCC and actual fees and charges may vary depending on the circumstances and length of the case. Notwithstanding the foregoing, where total charges are expected to exceed $10,000 in any single month, KCC may require advance payment from Client due and payable upon demand and prior to the performance of services. KCC's prices are inclusive of commission and other charges and are generally adjusted periodically to reflect changes in the business and economic environment. KCC reserves the right to reasonably increase its prices, charges and rates annually. If any such increase exceeds 10%, KCC will give thirty (30) days written notice to Client. Client agrees to pay the reasonable out of pocket expenses incurred by KCC in connection with Services, including, but not limited to, transportation, lodging, and meals.

KCC agrees to submit its invoices to Client and Client agrees that the amount invoiced is due and payable upon receipt. If any amount is unpaid as of thirty (30) days from the receipt of the invoice, the Client further agrees to pay a late charge (the "Finance Charge"), calculated as one and one-half percent (1-1/2%) of the total amount unpaid every thirty (30) days. In the case of a dispute in the invoice amount, Client shall give written notice to KCC within twenty (20) days of receipt of the invoice by Client. Client agrees the Finance Charge is applicable to instances where KCC agreed to provide certain pre-settlement work while deferring the billing of said work until the settlement phase.

**3. FURTHER ASSURANCES.** Client agrees that it will use its best efforts to include provisions reasonably acceptable to KCC in any relevant court order, settlement agreement or similar document that provide for the payment of KCC's fees and expenses hereunder. No agreement to which KCC is not a party shall reduce or limit the full and prompt payment of KCC's fees and expenses as set forth herein and in the Proposal.

**4. RIGHTS OF OWNERSHIP.** The parties understand that the software programs and other materials furnished by KCC to Client and/or developed during the course of the performance of Services are the sole property of KCC. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, and documentation. Client agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished to Client. Fees and expenses paid by Client do not vest in Client any rights in such property, it being understood that such property is only being made available for Client's use during and in connection with the Services provided by KCC.

**5. CONFIDENTIALITY.** Each of KCC and Client, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body it may, upon not less than five (5) business days' written notice to the other party, release the required information. These provisions shall survive termination of Services. KCC will not accept, and Client agrees not to send, any information that may be deemed protected health information under state or federal law without the consent of the data subjects or pursuant to the terms of an agreed qualified protective order entered by a court of competent jurisdiction.

**6. BANK ACCOUNTS.** At Client's request, KCC shall be authorized to establish accounts with financial institutions as agent for Client or as otherwise agreed by the parties. All Client accounts established by KCC shall be deposit accounts of commercial banks with capital exceeding $1 billion and an FIR rating of above Investment Grade or higher (each, an "Approved Bank"). Notwithstanding the foregoing, the parties may utilize any financial institution or electronic payment service provider specified in the Proposal in connection with the services to be provided hereunder, or as otherwise agreed to in writing, which institution or provider will be deemed an Approved Bank. In some cases, KCC may derive financial benefits from financial institutions resulting from settlement funds and other moneys on deposit or invested with them including, for example, discounts provided on certain banking services and service fees. The amounts held pursuant to these Terms and Conditions ("Amounts Held") are at the sole risk of Client and, without limiting the generality of the foregoing, KCC shall have no responsibility or liability for any diminution of the fund that may result from any deposit made with an Approved Bank including any losses resulting from a default by the Approved Bank or other credit losses. It is acknowledged and agreed that KCC will have acted prudently in depositing the fund at any Approved Bank, and KCC is not required to make any further inquiries in respect of any such bank.

**7. TERMINATION.** The Services may be terminated by either party (i) upon thirty (30) days' written notice to the other party or (ii) immediately upon written notice for Cause (defined herein). As used herein, the term "Cause" means (i) gross negligence or willful misconduct of KCC that causes serious and material harm to Client, (ii) the failure of Client to pay KCC invoices for more than sixty (60) days from the date of invoice, or (iii) the accrual of invoices or unpaid services where KCC reasonably believes it will not be paid. Termination of Services shall not relieve Client of its obligations to pay all fees and expenses incurred prior to such termination.

In the event that the Services are terminated, regardless of the reason for such termination, KCC shall reasonably coordinate with Client to maintain an orderly transfer of data, programs, storage media or other materials furnished by Client to KCC or received by KCC in connection with the Services. Client agrees to pay for such services in accordance with KCC's then existing prices for such services.

**8. LIMITATIONS OF LIABILITY AND INDEMNIFICATION.** Client shall indemnify and hold KCC, its affiliates, members, directors, officers, employees, consultants, subcontractors and agents (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, judgments, liabilities and expenses (including reasonable counsel fees and expenses) (collectively, "Losses") resulting from, arising out of or related to KCC's performance of Services. Such indemnification shall exclude Losses resulting from KCC's gross negligence or willful misconduct. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third-parties against any Indemnified Party. Client shall notify KCC in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that Client becomes aware of with respect to the Services provided by KCC.

Except as provided herein, KCC's liability to Client or any person making a claim through or under Client or in connection with Services for any Losses of any kind, even if KCC has been advised of the possibility of such Losses, whether direct or indirect and unless due to gross negligence or willful misconduct of KCC, shall be limited to the total amount billed or billable for the portion of the particular work which gave rise to the alleged Loss. In no event shall KCC's liability for any Losses, whether direct or indirect, arising out of the Services exceed the greater of (i) the total amount billed and paid by or through Client for the Services and (ii) solely in the event of any loss of the Amount Held caused by KCC's gross negligence or willful misconduct, the total Amount Held under Section 6. In no event shall KCC be liable for any indirect, special or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the Services. Except as expressly set forth herein, KCC makes no representations or warranties, express or implied, including, but not limited to, any implied or express warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity. The provisions of this Section 8 shall survive termination of Services.

**9. FORCE MAJEURE.** Whenever performance hereunder is materially prevented or impacted by reason of any act of God, strike, lock-out or other industrial or transportation disturbance, fire, lack of materials, law, regulation or ordinance, war or war condition, or by reason of any other matter beyond the performing party's reasonable control, then such performance shall be excused and shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

**10. INDEPENDENT CONTRACTORS.** KCC is and shall be an independent contractor of Client and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of the Services or these Terms and Conditions.

**11. NOTICES.** All notices and requests hereunder shall be given or made upon the respective parties in writing and shall be deemed as given as of the third day following the day it is deposited in the U.S. Mail, postage pre-paid or on the day it is given if sent by facsimile or on the day after the day it is sent if sent by overnight courier to the appropriate address set forth in the Proposal or to such other address as the party to receive the notice or request so designates by written notice to the other.

**12. APPLICABLE LAW.** These Terms and Conditions will be governed by and construed in accordance with the laws of the State of California, without giving effect to any choice of law principles.

**13. ENTIRE AGREEMENT; MODIFICATIONS; SEVERABILITY; BINDING EFFECT.** These Terms and Conditions, together with the Proposal delivered pursuant hereto, constitutes the entire agreement and understanding of the parties in respect of the subject matter hereof and supersede all prior understandings, agreements or representations by or among the parties, written or oral, to the extent they relate in any way to the subject matter hereof. If any provision herein shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby. These Terms and Conditions may be modified only by a written instrument duly executed by the parties. All of the terms, agreements, covenants, representations, warranties and conditions of these Terms and Conditions are binding upon, and inure to the benefit of and are enforceable by, the parties and their respective successors and permitted assigns.