# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| Gabrielle Carlson, *on behalf of herself and all others similarly situated,* | : <br> : <br> : Civil Action No.: 4:18-cv-40139-TSH <br> : |
| Plaintiff, | : |
| v. | : <br> : |
| Target Enterprise, Inc., | : <br> : |
| Defendant. | : |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF <u>CLASS ACTION SETTLEMENT AGREEMENT</u>

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................... iii

BACKGROUND......................................................................................................1

A.   The Regulation and M.G.L. ch. 93A...............................................................1

B.   This Litigation .................................................................................................3

C.   Preliminary Approval, Notice and Claims ......................................................4

D.   Notice Pursuant to the Class Action Fairness Act..........................................6

E.   Terms of the Settlement ..................................................................................6

ARGUMENT ..........................................................................................................7

I.    STANDARD FOR REVIEW FOR FINAL APPROVAL OF CLASS ACTION
      SETTLEMENTS ...............................................................................................7

II.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS........................9

III.  THE SETTLEMENT AGREEMENT IS FAIR, REASONABLE AND ADEQUATE
      UNDER *GRINNELL* ........................................................................................9

      A.   The Complexity, Expense, and Likely Duration of the Litigation Favor Approval ..........9

      B.   The Reaction of the Class to the Settlement Favors Approval .......................................10

      C.   The Stage of the Proceedings and the Amount of Discovery Completed Favors
           Approval ....................................................................................……..11

      D.   The Risks of Establishing Liability...............................................................12

      E.   The Risks of Establishing Damages and the Ability of the Defendant to Withstand a
           Greater Judgment ..........................................................................................12

      F.   The Risks of Maintaining the Class Action through Trial Favor Approval ....................13

      G.   The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery
           and of all the Attendant Risks of Litigation...................................................13

IV.   THE COURT SHOULD APPROVE THE OFFICE OF FINANCIAL EMPOWERMENT AS
      AN APPROPRIATE CY PRES RECIPIENT........................................................14

CONCLUSION.......................................................................................................16

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc.* v. *Windsor*,
    521 U.S. 591, 117 S. Ct. 2231 (1997) .......................................................................................13

*Armata v. Target Corp.*,
    480 Mass. 14 (2018)..................................................................................................................2, 11

*Beckman v. KeyBank, N.A.*,
    293 F.R.D. 467 (S.D.N.Y. 2013)..................................................................................................10

*Bezdek v. Vibram USA Inc.*,
    79 F. Supp. 3d 324 (D. Mass. 2015) ..............................................................................................8

*Detroit v. Grinnell Corp.*,
    495 F.2d 44 (2d Cir. 1974) .............................................................................................................8

*Forcellati v. Hyland's Inc.*,
    2014 WL 1410264 (C.D. Cal., Apr. 9, 2014)...............................................................................10

*Gascho v. Glob. Fitness Holdings, LLC*,
    822 F.3d 269 (6th Cir. 2016).........................................................................................................10

*Hill v. State St. Corp.*,
    2015 WL 127728 (D. Mass. Jan. 8, 2015) .....................................................................................8

*Hopkins v. Modernize, Inc.*,
    No. 17-cv-40087(TSH) (D. Mass) ...............................................................................................14

*In re Capital One Tel. Consumer Prot. Act Litig.*,
    80 F. Supp. 3d 781 (N.D. Ill. 2015) .............................................................................................14

*In re Lupron Mktg. & Sales Practices Litig.*,
    228 F.R.D. 75 (D. Mass. 2005) ..........................................................................................8, 10, 12

*In re Lupron Mktg. & Sales Practices Litig.*,
    677 F.3d 21 (1st Cir. 2012) ..........................................................................................................14

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    588 F.3d 24 (1st Cir. 2009) .............................................................................................................7

*In re Relafen Antitrust Litig.*,
    231 F.R.D. 52 (D. Mass. 2005) ................................................................................................8, 10

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
    535 F. Supp. 2d 249 (D.N.H. 2007) ...............................................................................................8

*Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Ass'n*,
  582 F.3d 30 (1st Cir. 2009) ............................................................................7, 8

*New Eng. Carpenters Health Benefits Fund v. First DataBank, Inc.*,
  602 F.Supp.2d 277 (D. Mass. 2009) ....................................................................8

*Ott v. Mortgage Inv'rs Corp. of Ohio, Inc.*,
  2016 WL 54678 (D. Or. Jan. 5, 2016) ................................................................14

*Roies-Medeiros v. Target Corp.*,
  No. 1573-cv-00689 (Mass. Superior) .................................................................11

*Rose v. Bank of Am. Corp.*,
  2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ....................................................14

*Sullivan* v. *DB Investments, Inc.*,
  667 F.3d 273 (3d Cir. 2011) ...............................................................................13

*Voss v. Rolland*,
  592 F.3d 251 (1st Cir. 2010) .................................................................................7

*White v. Nat'l Football League*,
  822 F. Supp. 1389 (D. Minn. 1993) ...................................................................13

*Wright v. Stern,*
  553 F.Supp.2d 337 (S.D.N.Y.2008) ...................................................................10

## Statutes

M.G.L. ch. 93A, § 2 ..................................................................................................1

M.G.L. ch. 93A, § 9(1)..............................................................................................2

M.G.L. ch. 93A, § 9(2)..............................................................................................2

M.G.L. ch. 93A, § 9(3)..........................................................................................2, 12

## Other Authorities

Attorney General, Press Release, Updated Debt Regulations Provide Stronger Protections (Mar. 1,
  2012), available at http://www.mass.gov/ago /news-and-updates/press-releases/2012/2012-03-01-
  debt-collection-regulations.html .........................................................................2

## Rules

Fed. R. Civ. P. 23(c)(2) .............................................................................................1

Fed. R. Civ. P. 23(e)................................................................................................................8

Fed. R. Civ. P. 23(e)(2) ..........................................................................................................7

Settlement Class Representative Gabrielle Carlson ("Plaintiff" or the "Carlson"), by and through her undersigned counsel, respectfully submits this Memorandum of Law in Support of her Motion for Final Approval of the Class Action Settlement between Plaintiff and Defendant Target Enterprise, Inc. ("Target" or "Defendant") (collectively, the "Parties").

Pursuant to the Preliminary Approval Order and Fed. R. Civ. P. 23(c)(2), notice was sent to the Settlement Class detailing the terms of the Settlement Agreement.[1]  The response has been overwhelmingly positive.  There have been no objections.  There have been only two (2) requests to opt out.  There have been 5,484 valid claims submitted by Settlement Class Members, each of whom will recover $260.23 as their *pro rata* share of the Settlement Fund.  This is an outstanding result providing very substantial relief for claims under Mass. Gen. Laws ch. 93A, § 2, and  940 CMR § 7.04(1)(f) (2012) (the "Debt Collection Regulation").   As set forth herein, Plaintiff respectfully requests the Court (1) approve the Class Action Settlement Agreement (the "Settlement Agreement") as fair, reasonable and adequate; (2) order dispersal of the class settlement fund of $2,275,000.00 as set forth in the Parties' Settlement Agreement; and (3) enter the final approval order in the form submitted as Exhibit A to the Motion for Final Approval of the Parties' Class Action Settlement Agreement.

## **BACKGROUND**

### A.  The Regulation and M.G.L. ch. 93A

M.G.L. ch. 93A, the Massachusetts Consumer Protection Law, prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." M.G.L. c. 93A, § 2(a).

In 2012, the Attorney General of Massachusetts invoked her power to implement rules and regulations interpreting M.G.L. c. 93A, § 2(a) to provide " 'It shall constitute an unfair or deceptive

---

[1] The notice and claims process is detailed in the accompanying declaration of Lana Lucchesi ("Lucchesi Decl.") from KCC Class Action Services, LLC ("KCC"), the class action administrator.

act or practice for a creditor to contact a debtor . . . [by] [i]nitiating a communication with any debtor via telephone, either in person or via text messaging or recorded audio message, in excess of two such communications in each seven-day period to either the debtor's residence, cellular telephone, or other telephone number provided by the debtor as his or her personal telephone number . . . .'" *Armata v. Target Corp.*, 480 Mass. 14, 17-18 (2018) (quoting 940 C.M.R. 7.04(1)(f)) (emphasis in original).

As the Court in *Armata* set forth, the purpose of this prohibition on excess calling is to "prevent[] creditors from harassing, oppressing, or abusing debtors" (*Armata,* 480 Mass. at 15) and to "'ensure that the playing field is level for both creditors and consumers so that all parties are better protected'" (*Armata*, 480 Mass. at 20 (citing Attorney General, Press Release, Updated Debt Regulations Provide Stronger Protections (Mar. 1, 2012), available at http://www.mass.gov/ago /news-and-updates/press-releases/2012/2012-03-01-debt-collection-regulations.html [https://perma.cc/F656-9NE3])).

M.G.L. ch. 93A, § 9(1) provides that any person "who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two or any rule or regulation issued thereunder . . . may bring an action in the superior court . . . whether by way of original complaint, counterclaim, cross-claim or third party action, for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper."

Section 9(2) provides that such persons may bring claims as a class action. M.G.L. ch. 93A, § 9(2).

Section 9(3) provides that "if the court finds for the petitioner, recovery shall be in the amount of actual damages or twenty-five dollars, whichever is greater; or up to three but not less than two times such amount if the court finds that the use or employment of the act or practice was a willful or knowing violation of said section two . . . ." M.G.L. ch. 93A, § 9(3).

**B.  This Litigation**

On June 25, 2018, Ms. Carlson filed her class action complaint in Worcester Superior Court against Target, alleging that Target placed more than two calls in a seven-day period to her, and a class of similarly situated Massachusetts residents, in violation of 940 CMR § 7.04(1)(f).

On August 16, 2018, Target removed the case to the United States District Court for the District of Massachusetts. (Doc. No. 1).  On September 6, 2018, Target filed its Answer. (Doc. No. 11).

On September 5, 2018, Plaintiff moved to remand this matter to the Superior Court. (Doc. No. 9).  Target opposed the motion. (Doc. No. 15).

On September 18, 2018, Target moved "(1) for a finding under Massachusetts General Laws Chapter 93A, § 9(3), that its written tender of settlement in this action was reasonable in relation to the injury that Plaintiff, Gabrielle Carlson ("Ms. Carlson"), allegedly suffered; and (2) for an order permitting deposit of the rejected tender into the Court." (Doc. No. 13).  Plaintiff opposed the motion. (Doc. No. 16).

On November 27, 2018, the Court denied Plaintiff's motion to remand (Doc. No. 25) and granted in part and denied in part Target's motion regarding its tender of settlement. (Doc. No. 24).

On December 14, 2019, the Parties attended an all-day mediation session before the Honorable Stephen E. Neel (Ret.). Declaration of Sergei Lemberg (Doc. No. 44-2) ¶ 15; Declaration of Stephen Taylor (Doc. No. 44-3) ¶ 9.  The Parties provided Judge Neel with detailed mediation briefs (both in confidential and a non-confidential form to be exchanged between the Parties) addressing all aspects of this case: claims in chief, defenses, class certification and the defenses or objections thereto, damages, and settlement. Declaration of Sergei Lemberg (Doc. No. 44-2) ¶¶ 15-17; Declaration of Stephen Taylor (Doc. No. 44-3) ¶¶ 9-11.  The mediation was adversarial and

3

conducted at arm's-length through Judge Neel. *Id*. The mediation process resulted in a settlement in principle to resolve this matter on a class-wide basis. *Id*.

Following the mediation, the Parties negotiated and drafted a Term Sheet and then the Settlement Agreement, which Plaintiff submits to the Court for approval.   Further, Plaintiff conditioned any settlement on confirmatory discovery into the calls to the Plaintiff and her proposed class, the identity and size of the class and Target's alleged practice of calling consumers in excess of twice in a seven day period. Declaration of Stephen Taylor (Doc. No. 44-3) ¶¶ 14-16.   The confirmatory discovery consisted of (1) written interrogatories and (2) two depositions of Target employees in Minneapolis, Minnesota.

### C.  Preliminary Approval, Notice and Claims

The notice program approved by the Court has been, and is continuing to be, implemented by the Settlement Administrator in accordance with the Settlement Agreement and the Court's direction.

#### I.        *Notice Process*

On June 26, 2019, the Court granted Plaintiff's Motion for Preliminary Approval of the Class Action Settlement. (Doc. No. 50). On July 12, 2019, Target transmitted the class list consisting of 43,667 persons to KCC, the Settlement Administrator. Lucchesi Decl. ¶ 2. The list was reviewed for duplicate entries and the addresses of 3,079 class members were updated through the National Change of Address Database ("NCOA"). *Id*.  After this de-duplication and update process, the class list contained 43,578 names and addresses. *Id*. ¶ 3.

On July 26, 2019, KCC mailed the Postcard Notice to 43,578 class members. *Id*.  A copy of the mailed Postcard Notice is attached as Exhibit A to the Lucchesi Declaration. Five hundred and thirty (530) were returned with a forwarding address and were re-mailed. *Id*. ¶ 4.  Two thousand five hundred and thirty eight (2,538) were returned by the USPS with an undeliverable address. *Id*. ¶

5.  For those, KCC performed address searches through credit bureau and/or other public databases and re-mailed the Postcard Notice to 412 addresses. *Id*. ¶ 5. In total, of the 43,578 class members, KCC successfully mailed or re-mailed the Postcard Notice to 41,407 class members.

By July 26, 2019, the Settlement Website, www.CarlsonTargetClass.com, was live. *Id*. ¶ 6.[2] The website permitted class members to submit claims online, view case documents, the Long Form Notice and pertinent case deadlines. *Id*. The website has been visited 6,451 times by December 17, 2019. *Id*.

On July 25, 2019, the Settlement Administrator established a toll-free telephone number (1-855-445-9435) at which persons could get information through a interactive voice prompt system or to seek assistance from a live operator during regular business hours. *Id*. ¶ 7.  As of December 17, 2019, KCC has received a total of 266 calls to the telephone hotline. *Id*.

II.     *Claims, Exclusions, Objections*

There are 5,484 valid and timely claims from class members, 2 exclusion requests and no objections. *Id*. ¶¶ 8-10.

In total, KCC received 5,595 timely claim forms before the October 24, 2019, cutoff and 64 postmarked after the October 24, 2019, cutoff. *Id*. ¶ 8.  Of the 64 untimely claims, 2 were from persons resent the notice after their first Postcard Notice was returned by the USPS. *Id*.  Because they were the result of a re-mailed notice, counsel for the Parties agreed to treat those two class member claims as timely. *Id*. Several class members submitted more than one claim; thus after de-duplicating the total valid and timely claims submitted, the Settlement Administrator identifies the 5,484 valid claims from class members. *Id*.

---

[2] The Administrator's declaration says that the website was established "on or about" July 26, 2019. Class counsel can confirm that prior to the 26th a test version was made available to the Parties such that the claims portal, display, information and document downloads could be tested.  Class counsel can also confirm that the website was available to the public on July 26, 2019, the notice date.

There are 2 requests for exclusion. *Id*. ¶ 9.  The full requests, with the requesters' full names and addresses, have been provided to counsel for the Parties. *Id*.  A list of the exclusion requests, identifying the requesters by first initial, last name and city and state, is attached as <u>Exhibit C</u> to the Lucchesi Declaration. *Id*.  The list is also attached as <u>Exhibit A</u> to the Proposed Final Approval Order.

There have been no objections to the settlement submitted to KCC. Lucchesi Decl. ¶ 10. Further, Class Counsel has not received any objections nor have any objections been filed on the Court's docket.

**D. Notice Pursuant to the Class Action Fairness Act**

In accordance with the Class Action Fairness Act, 28, U.S.C. § 1715, on June 24, 2019, Defendant served copies of the Parties' Class Action Settlement Agreement on the appropriate Federal and State officials.  Doc. No. 48 (Certificate of Service).

There have been no inquiries from any Federal or State body regarding the Settlement Agreement.

**E. Terms of the Settlement**

1. <u>Benefits to the Class</u>

The Settlement Class preliminarily approved is:

All persons residing in the Commonwealth of Massachusetts who, within four years prior to the filing of this action, received in excess of two telephone calls regarding a debt from Target within a seven-day period to their residence, cellular telephone, or other provided telephone number.

Doc. No. 50 ¶ 4.

Under the terms of the Settlement Agreement, each Class Member can claim an equal share of a $2,275,000.00, non-reversionary, Settlement Fund. *See Settlement Agreement*, Art III ¶ 1.a. Settlement Class Members who timely submit a valid claim form will receive an equal *pro-rata*

6

distribution from the settlement fund, after Attorneys' Fees and Costs, an Incentive Award to the Named Plaintiff, and Settlement Administration Costs are deducted from the Settlement Fund and the Settlement Administrator reviews all Claim Forms to determine a final number of claimants. *Id.* ¶ 1.d.   If money remains in the Settlement Fund from un-cashed benefit checks (checks sent to claiming Settlement Class members which the members do not cash or deposit), the Settlement Administrator shall, if administratively feasible, make a second distribution of the settlement fund to those who did claim their checks. *Id.* ¶ 1.f.

Assuming the Court approves (1) attorneys' fees and costs of $758,333.33 and the incentive award to Carlson of $7,500.00[3] and (2) the Settlement Administrator's costs of up to $82,049.71 (Lucchesi Decl. ¶ 11), the Settlement Class members who submitted valid claims will each recover $260.23.[4]

## ARGUMENT

### I. STANDARD FOR REVIEW FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS

A district court can approve a class action settlement that is fair, reasonable and adequate. *See* Fed. R. Civ. P. 23(e)(2); *accord Voss v. Rolland*, 592 F.3d 242, 251 (1st Cir. 2010). The Court enjoys "great discretion to 'balance [a settlement's] benefits and costs' and apply this general standard." *Voss*, 592 F.3d at 251 (*citing Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Ass'n*, 582 F.3d 30, 45 (1st Cir. 2009)).   If the parties negotiated at arm's length and conducted sufficient discovery, a presumption is created that the settlement is reasonable. *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32-33 (1st Cir. 2009).

---

[3] On September 24, 2019, Plaintiff filed her motion for approval of these fees, costs and the incentive award. Doc. No. 51.  That motion was then posted to the settlement website at http://www.carlsontargetclass.com/case-documents.aspx.

[4] ($2,275,000.00 - $758,333.33 - $7,500.00 - $82,049.71)  / 5,484 = $260.23

Public policy favors the settlement of class actions. *See Hill v. State St. Corp.*, No. 09-12146, 2015 WL 127728, at *6 (D. Mass. Jan. 8, 2015) (determination of whether settlement is fair, reasonable and adequate should be conducted "within the context of the public policy favoring settlement"); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 259 (D.N.H. 2007) ("[P]ublic policy generally favors settlement-particularly in class actions . . . ."). While public policy "encourages settlements, the burden remains on the proponents to show that the settlement is reasonable." *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009) (internal citations omitted). The final approval of any proposed class settlement ultimately requires the Court to balance "the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." *Id.* at 44.

On final approval, courts in the First Circuit often apply the so-called *Grinnell* factors set forth by the Second Circuit in *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). *See Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 343-44 (D. Mass. 2015); *New Eng. Carpenters Health Benefits Fund v. First DataBank, Inc.*, 602 F.Supp.2d 277, 281 (D. Mass. 2009); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 72 (D. Mass. 2005); *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 93–94 (D. Mass. 2005). These factors include: "(1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Grinnell*, 495 F.2d at 463.

## II.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

In connection with preliminary approval, the Court conditionally certified the Settlement Class. Doc. No. 50 ¶ 4.  The Court made preliminary findings that the requirements of Fed. R. Civ. P. 23(a) and (b)(3) were met. Doc. No. 50 ¶ 5.   The requirements of class certification were addressed in Plaintiff's memorandum in support of preliminary approval. Doc. No. 44 at pgs. 12-16. No class member or entity has objected to the preliminary certification, Plaintiff restates her arguments in support of certification (*id.*) and the Court should enter the Proposed Final Approval Order adopting its preliminary conclusions and certifying the Settlement Class. *See* Proposed Final Approval Order ¶ 8.

## III.   THE SETTLEMENT AGREEMENT IS FAIR, REASONABLE AND ADEQUATE UNDER *GRINNELL*

### A.  The Complexity, Expense, and Likely Duration of the Litigation Favor Approval

This factor weighs in favor of approval.  While a key practice – Target's calling of debtors in excessive of two times in a seven day period – was addressed by the Supreme Judicial Court in *Armata*, whether those practices were amenable to class treatment was and is a separate question. In additional to its general defenses, Target had several potential available defenses for these specific claims including (1) whether class members had requested a call from Target triggering an allegedly unlawful call from Target in the first place (*see* 940 CMR 7.04(f) (excluding calls which were as a result from a request by the debtor) and (2) that Target was unable to reach class members through their answering machines and, therefore, no unlawful attempts to communicate occurred. How these issues would develop on a class basis, and whether they could frustrate class certification under Rule 23 itself, was a complex issue in the case and, to resolve the same would take years of discovery and further litigation.  So too, whether this matter should be certified as a class action

would also take years of discovery and litigation.  The settlement here resolves these issues now and in the settlement class' favor and these issues weigh in favor of approval.

### B.  The Reaction of the Class to the Settlement Favors Approval

The class's reaction to the settlement has been extremely positive. There have been no objections.  There have been only two requests to opt out.  There have been 5,484 valid claims from 43,578 class members equaling a participation rate of 12.5%. *Forcellati v. Hyland's Inc.*, 2014 WL 1410264, at *6 (C.D. Cal., Apr. 9, 2014) ("[T]he prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3-5 percent."); *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 290 (6th Cir. 2016) (8% response rate "was well within the acceptable range for a consumer class action.").

This positive response to the settlement is evidence of its fairness. *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 72 (D. Mass. 2005) (reaction to settlement was positive with 5,489 claims (out of class in the millions), 140 opt-outs, and 10 objections); *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 96 (D. Mass. 2005) (reaction to settlement was positive with 10,614 consumer claims (out of class in the tens or hundreds of thousands), 49 opt-outs, and 10 objectors); *see Wright v. Stern*, 553 F.Supp.2d 337, 345 (S.D.N.Y.2008)  ("The fact that the vast majority of class members neither objected nor opted out is a strong indication that the proposed settlement is fair, reasonable, and adequate."); *see also Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 475 (S.D.N.Y. 2013) (concluding class reaction was positive where none objected and eight of 1,735 members opted out).

Further, none of the entities notified of the Settlement Agreement pursuant to the CAFA requirements have voiced any concern with the settlement.

Thus, because the participation of the class is high, no one objects and exclusions are *de minimis*, the second *Grinnell* factor weighs in favor of final approval.

### C.  The Stage of the Proceedings and the Amount of Discovery Completed Favors Approval

This case settled at an appropriate time where Class Counsel has conducted more than sufficient investigation and discovery to enable them, and the Court, to act intelligently here.

First, Class Counsel represented the plaintiff in *Armata v. Target Corp.*, 480 Mass. 14 (2018).  Class Counsel also represented a plaintiff in another matter which alleged the same violation of Regulation 7.04(1)(f) and ch. 93A, *Roies-Medeiros v. Target Corp.*, No. 1573-cv-00689 (Mass. Superior).  In both those actions, Plaintiff took extensive discovery regarding Target's alleged practice of calling more than twice in a seven day period, including multiple depositions and written discovery. Lemberg Decl. (Doc. No. 44-2) ¶¶ 10-13.  Class Counsel had ample knowledge and experience with the policies and practices at issue to negotiate and advocate this settlement.

Second, settlement was made contingent on confirmatory discovery.  In particular, discovery into the calls to the Plaintiff and her proposed class, and the identity and size of the class.  Plaintiff issued written interrogatories and took two depositions to confirm that the class size and composition matched, or was substantially the same as, the class range assumed while negotiating the size of the Settlement Fund. Declaration of Stephen Taylor (Doc. No. 44-3) ¶¶ 14-18.

Finally, the settlement discussions were adversarial, arm's-length and conducted before a retired and respected jurist. It is Class Counsel's professional judgment, based on their review of Defendant's defenses, the size of the class, the risks in establishing liability and maintaining the action as a class action, that Settlement now, at this stage, is the best option for the Settlement Class.  Therefore, the third *Grinnell* factor weighs in favor of final approval.

11

### D.  The Risks of Establishing Liability

"[A] significant element of risk adheres to any litigation taken to binary adjudication." *Lupron*, 228 F.R.D. at 97.  Although Plaintiff believes her arguments in support of liability to be strong, Defendant disputed Plaintiff's claims and believed it would prevail at summary judgment or on a motion for class certification.  Although Plaintiff believes that the claims she raised are meritorious and would prove successful, she recognizes that ultimate success on the merits is by no means assured.  Further, Target was and is represented by very able counsel, who have demonstrated Target's ability to put forth a vigorous defense.

Additionally, Target's September 18, 2018, motion to tender relief to the Plaintiff was, to Plaintiff's counsel, part of a strategy to attempt to moot Plaintiff's individual claims and, through that, any class relief.  How that strategy would ultimately play out is unknown but its potential success was a risk in the litigation and the fourth *Grinnell* factor weighs in favor of final approval.

### E.  The Risks of Establishing Damages and the Ability of the Defendant to Withstand a Greater Judgment

Target's ability to pay is a neutral factor here.  Target is well-funded and the settlement amount was not affected by unavailability of funds.

There is risk in establishing damages.  Damages for violations of Chapter 93A are twenty-five dollars or actual damages, whichever is greater, with the prospect of trebling the same for willful or knowing violations. M.G.L. ch. 93A, § 9(3).  Whether Plaintiff could recover the $25 statutory penalty for each separate violation of the Debt Collection Regulation (*i.e.* for each instance Target called in excess of two times in a seven day period), as opposed to $25 dollars per action, is an issue.  No Court has firmly held either way in the context of the Debt Collection Regulation.  However, Courts addressing other claims under chapter 93A demonstrate the hurdles Plaintiff could face here.  *See Aspinall v. Philip Morris Companies, Inc.*, 2013 WL 7863290, at *8-10 (Mass. Super. Feb. 7, 2013).  Further, establishing actual damages on a class or individual basis posses

risks both on the merits (how much would this Court or a jury award for actual damages for receipt of too many telephone calls?) and to certification.  To be clear, Plaintiff believes these risks could be dealt with but they are real and weigh in favor of approval.

### F.  The Risks of Maintaining the Class Action through Trial Favor Approval

Plaintiff faced risks on class certification.  Although this Court certified a class for settlement purposes, "[t]he requirements for class certification are more readily satisfied in the settlement context than when a class has been proposed for the actual conduct of the litigation." *White v. Nat'l Football League*, 822 F. Supp. 1389, 1402 (D. Minn. 1993) (citations omitted); *see also Amchem Prods., Inc.* v. *Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."); *Sullivan* v. *DB Investments, Inc.*, 667 F.3d 273, 303 (3d Cir. 2011) (*en banc*).  Thus, there is no guarantee that a class would have been certified for litigation purposes in this case.

If the Court had rejected certification in this case, there would have been no relief for any class member except the named Plaintiff, regardless of the merits of the underlying claims.  Because of this risk this factor also favors approval of the Settlement.

### G.  The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and of all the Attendant Risks of Litigation

The final two factors weigh strongly in favor of approval. The 5,484 Settlement Class Members who submitted claims will each recover $260.23 as their *pro rata* share of the net Settlement Fund. This is an outstanding recovery for violations of chapter 93A and the Debt Collection Regulation.  The statutory award under 93A is low and actual damages in a case such as this for receipt of an excessive number of telephone calls is uncertain. While there are no other class settlements for violations of the Debt Collection Regulations to compare to, settlements under the Telephone Consumer Protection Act ("TCPA"), the federal statute that prohibits certain robocalls,

13

are instructive.  Compared to Chapter 93A, damages under the TCPA are (i) certain and (ii) far higher where the TCPA has a mandatory penalty of $500 per each and every violation of the act. 47 U.S.C. § 227(c)(5)(B). However, TCPA class settlements worth far less than the settlement here are frequently approved as fair, reasonable, and adequate.  *See, e.g.*, <u>Hopkins v. Modernize, Inc.</u>, Doc. No. 101 & 108, 17-cv-40087(TSH) (D. Mass) (final approval granted of TCPA class settlement with per claimant recovery of $26 with a participation rate of 3%); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (per claimant recovery of $34.60 with a participation rate of 7.8%); *In Gehrich v. Chase Bank USA, N.A.*, 2016 WL 806549 (N.D. Ill. Mar. 2, 2016) (per claimant recovery of $52.50 with participation rate of 1.08%); *Ott v. Mortgage Inv'rs Corp. of Ohio, Inc.*, 2016 WL 54678, (D. Or. Jan. 5, 2016) (per claimant recovery of $140.86 with participation rate of .08%); *Rose v. Bank of Am. Corp.*, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ($20.00 to $40.00 per class member with 3% claims rate).  In comparison, the settlement value here is very high ($260.23 per claiming member), broad based (the participation rate is 12.5%) and is more than reasonable in light of the best possible recovery and of all the attendant risks of litigation.

Because consideration of all the *Grinnell* factors weighs in favor of approval of the Settlement Agreement, Plaintiff requests the Court grant this motion for final approval.

### IV.   THE COURT SHOULD APPROVE THE OFFICE OF FINANCIAL EMPOWERMENT AS AN APPROPRIATE CY PRES RECIPIENT

Plaintiff nominates the Office of Financial Empowerment (https://ofe.boston.gov/) as an appropriate *cy pres* recipient in this action.

A *cy pres* distribution of unclaimed funds may be made to an entity with interests reasonably approximate to the class.  *In re Lupron Mktg. & Sales Practices Litig.*, 677 F.3d 21, 33 (1st Cir. 2012) ("As to whether distributions reasonably approximate the interests of the class members, we

consider a number of factors, which are not exclusive. These include the purposes of the underlying statutes claimed to have been violated, the nature of the injury to the class members, the characteristics and interests of the class members, the geographical scope of the class, the reasons why the settlement funds have gone unclaimed, and the closeness of the fit between the class and the cy pres recipient."

The expectation here is that any *cy pres* distribution will be low. The entire net settlement fund will be dispersed to Settlement Class Members in the first instance. To the extent Settlement Checks are not cashed, the Settlement Administrator will make a second distribution of unclaimed funds to those that *did* cash their check. *See Settlement Agreement*, Art III ¶ 1.f. Only where the second distribution is not administratively feasible or if amounts remain in the fund after a second distribution, will the residual of the fund go to the *cy pres* recipient.

Further, the Office of Financial Empowerment has interests which are reasonably approximate to the class here. The class is made up of Massachusetts residents who have an interest in pursuing consumer protection in the area of debt collection. Further, because the calls at issue here were collection calls, it can reasonably be assumed that many if not the majority of class members may be in some sort of financial difficulty. The Office of Financial Empowerment has reasonably approximate interests. Its mission is "to link those seeking financial security and wealth generation with access to capital, financial education, and financial services." https://ofe.boston.gov/about-us/. If offers a variety of programs to help consumers gain financial security. *See* https://ofe.boston.gov/ under "Programs." It also works with other organizations as an advocate for legislation in the Massachusetts legislature to "protect consumers from predatory practices of the debt buyer industry." These reasonably approximate the interests of the class and the Office of Financial Empowerment is an appropriate *cy pres* recipient.

15

## **CONCLUSION**

For all these reasons, Plaintiff respectfully requests that this Court: (1) finally approve the attached Settlement Agreement as fair, reasonable and adequate; (2) order dispersal of the class settlement fund, and (3) enter the final approval order in the form submitted as Exhibit A to the Motion for Final Approval of the Parties' Class Action Settlement Agreement.

Dated: December 24, 2019

Respectfully submitted,
LEMBERG LAW, LLC

_/s/ Stephen Taylor_
Sergei Lemberg
Stephen Taylor
Lemberg Law, LLC
43 Danbury Road
Wilton, CT 06897
Tel: (203) 653-2250
Attorneys for Plaintiff

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 24, 2019, I served a true and accurate copy of the foregoing to counsel of record through the Court's CM/ECF system.


 */s/ Stephen Taylor*
Stephen Taylor